IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KEVIN NORA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:19-cv-2738-M-BN |
| | § | |
| CUSHMAN & WAKEFIELD, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

Plaintiff Kevin Nora filed a *pro se* petition in state court asserting claims of employment discrimination. Defendant C&W Facility Services, Inc. ("C&W"), wrongly named as "Cushman & Wakefield," removed the case to federal court. The case was then referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from Chief Judge Barbara M. G. Lynn.

C&W then moved, under Federal Rules of Civil Procedure 8(a), 12(b)(6), 12(e), and 12(f), to dismiss the complaint, for a more definite statement, and to strike. *See* Dkt. Nos. 4 & 5. Nora responded by filing a motion for leave to file an amended complaint. *See* Dkt. No. 6. And the Court granted his motion, *see* Dkt. No. 7, noting that

> because Nora has now filed an amended complaint after being "apprised of the insufficiency of [his initial] complaint" – through [C&W's] motion – the Court will consider the amended complaint as Nora's pleading his best case, and, should the Court grant any motion to dismiss the amended complaint, Nora's claims could be dismissed with prejudice. *Wiggins v. La. State Univ. – Health Care Servs. Div.*, 710 F. App'x 625,

627 (5th Cir. 2017) (per curiam) ("Ordinarily, 'a *pro se* litigant should be offered an opportunity to amend his complaint before it is dismissed.' ... Granting leave to amend, however, is not required if the plaintiff has already pleaded her 'best case.' A plaintiff has pleaded her best case after she is apprised of the insufficiency of her complaint." (quoting *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009); citations and internal quotation marks omitted)).

*Id.* at 2.

C&W now renews its motion to dismiss Nora's claims under Rule 12(b)(6). *See* Dkt. Nos. 11 & 12. As ordered, *see* Dkt. No. 13, Nora filed a response, *see* Dkt. No. 14. And C&W replied. *See* Dkt. No. 15.

The undersigned enters these findings of fact, conclusions of law, and recommendation that the Court should grant the motion to dismiss the amended complaint to the extent that Nora has failed to state a claim upon which relief may be granted and that, because Nora filed an amended complaint after being apprised of the insufficiency of his initial complaint, the Court should dismiss this case with prejudice.

**Applicable Background**

Through his amended complaint [Dkt. No. 8], Nora alleges that he was discriminated against based on his race (Black) and his age (54). He cites Title VII of the Civil Rights Act of 1964 in his amended complaint. *See id.* at 1, 6.  And his age discrimination allegations should be construed as asserting a claim under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.* (the "ADEA").

Nora alleges the following facts in support of his claims:

Plaintiff was employed by Defendant on about March of 2018 and continue in employment until he was suspended without pay on about April 26, 2019; and subsequently terminated on about May 7, 2019

allegedly for "Time Theft." Plaintiff's last position and title was Material Handling Equipment Technician (MHD-1).

At all times [germane] herein to the alleged facts leading to Plaintiff's suspension and termination of employment, Plaintiff's lead supervisor was a person known as "Joe Wages" (Wages), a white male. One successively higher supervisor or manager was Jacob (Jake) Ferrell (Ferrell), white male, Assistant Maintenance Manager. Plaintiff was suspended and subsequently and wrongfully terminated because of his race or color (black), and because of his age (54 at time of termination) by John Stancak (Stancak), white male, Assistant Maintenance Manager on about May 7, 2019.

In late January or early February of 2019, Russel Rogers directed me to assist Elijah (Elijah) Assistant Maintenance Manager, at Defendant's FTW2 location.

On about mid-March of 2019, Plaintiff and a co-employee, Jason Cox (Cox), a white male about age 34 at the time of occurrence, were directed by Charlie Logan (Logan), Asst. Maintenance Manager, to leave my customary place of employment and go to location FTW2 to assist an employee named Elijah for two (2) consecutive days at 1.5 hours each day.

On or about March 26, 2019, Plaintiff was working with a co-employee, Gershon Jessie (Jessie) were working in location FTW-6 when Wages paged Jessie two (2) or three (3) times to leave his critical assignment which could not be stopped at the risk of loss of job and loss of money to Defendants. Jessie told Wages he could not leave his post due to critical nature of the work he was performing.

Plaintiff sought to help Wages out in Jessie's place due to other employees catching Plaintiff's slack temporarily, and walked about one thousand or more feet (about 1/4th mile) to see what assistance Wages needed. Upon arriving at Wage's location Plaintiff discovered that what Wages wanted done was to provide a 7/16th wrench to remove a guard rail because other technicians in Wages' area didn't have a wrench. Plaintiff provided his wrench. Plaintiff thereafter chimed Wages to confidentially suggest that Wages could better assist all workers by taking care of a "wrench" problem, himself, instead of pulling workers being tasked and pressed to near human limits from their positions.

Later, Wages complained to Eric Lax (Lax) another lead person that Plaintiff was Lax's "girlfriend" and derogatorily referred to Plaintiff as "brother man."

On about April 26, Plaintiff was verbally suspended over the telephone by John Stancak allegedly for Time Theft. On about May 7, 2019, Plaintiff was terminated by telephone call. Thereafter Plaintiff received a letter from Defendant stating that he was terminated and to turn in all Defendant's equipment.

....
Plaintiff shows that another similarly situated black co-employee, Jessie, was terminated at the same time, apparently for the same reason(s). Plaintiff believes and alleges that his employment was terminated based upon intentional discrimination because of his race (black), and because of his age, 54. Plaintiff further alleges that Defendants have intentionally engaged in unlawful employment practices based upon race ....

Dkt. No. 8, ¶¶ 3-10, 12.

## Legal Standards

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted, the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007). But a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level," *id.* at 555.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679); *see also*

*Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) ("Where the well-pleaded facts of a complaint do not permit a court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" (quoting *Iqbal*, 556 U.S. at 678 (quoting, in turn, FED. R. CIV. P. 8(a)(2)))).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, a plaintiff must allege more than labels and conclusions, and, while a court must accept all of a plaintiff's allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.* Instead, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, a plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that the plaintiff contends entitle him or her to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *see also Inclusive Communities Project*, 920 F.2d at 899 ("'Determining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" (quoting *Iqbal*, 556 U.S. at 679; citing *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) ("[T]he degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends

on context.")).

This rationale has even more force here, as the Court "must construe the pleadings of *pro se* litigants liberally," *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006), "to prevent the loss of rights due to inartful expression," *Marshall v. Eadison*, 704CV123HL, 2005 WL 3132352, at *2 (M.D. Ga. Nov. 22, 2005) (citing *Hughes v. Rowe*, 449 U.S. 5, 9 (1980)). But "liberal construction does not require that the Court ... create causes of action where there are none." *Smith v. CVS Caremark Corp.*, No. 3:12-cv-2465-B, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013). "To demand otherwise would require the 'courts to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party.'" *Jones v. Mangrum*, No. 3:16-cv-3137, 2017 WL 712755, at *1 (M.D. Tenn. Feb. 23, 2017) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)).

Aside from "matters of which judicial notice may be taken under Federal Rule of Evidence 201," *Inclusive Communities Project*, 920 F.2d at 900 (citations omitted), a court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion, *see Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224

F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys.*
*Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

While the United States Court of Appeals for the Fifth Circuit "has not
articulated a test for determining when a document is central to a plaintiff's claims,
the case law suggests that documents are central when they are necessary to
establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is
based on the terms of a contract, the documents constituting the contract are central
to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D.
Tex. 2011). "However, if a document referenced in the plaintiff's complaint is merely
evidence of an element of the plaintiff's claim, then the court may not incorporate it
into the complaint." *Id.*

And a plaintiff may not amend his allegations through a response to a motion
to dismiss. "[A] claim for relief" must be made through a pleading, FED. R. CIV. P. 8(a),
and a response to a motion is not among the "pleadings [that] are allowed" under the
Federal Rules of Civil Procedure, FED. R. CIV. P. 7(a); *see, e.g., Klaizner v.*
*Countrywide Fin.*, No. 2:14-CV-1543 JCM (PAL), 2015 WL 627927, at *10 (D. Nev.
Feb. 12, 2015) ("All claims for relief must be contained in a pleading. A response to a
motion is not a pleading and it is improper for the court to consider causes of action
not contained in the pleadings." (citations omitted)).

## Analysis

I.    <u>Failure to Exhaust</u>

Before a plaintiff can file a suit in federal court alleging
employment discrimination under Title VII, he must exhaust his

administrative remedies. He exhausts those remedies by filing "a timely charge with the EEOC, or with a state or local agency with authority to grant or seek relief from the alleged unlawful employment practice." "Exhaustion occurs when [a] plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue." The filing of an EEOC charge "'is a precondition to filing suit in district court.'" Upon receiving a statutory notice of right to sue, a plaintiff has ninety days to file a civil action pursuant to her Title VII claims. 42 U.S.C. § 2000e-5(f)(1). The ninety-day limitations period is strictly construed against all litigants, and *pro se* litigants are not excused from abiding by the limitations period.

*Reed v. Fas Pac Store*, No. 7:18-cv-164-O-BP, 2020 WL 853908, at *3 (N.D. Tex. Feb. 4, 2020) (citations omitted), *rec. accepted*, 2020 WL 833419 (N.D. Tex. Feb. 20, 2020).

"Likewise, a claimant seeking judicial relief under the ADEA must, as a precondition, exhaust his or her administrative remedies by filing a charge of discrimination with the EEOC." *Lawson v. Jason Pharm., Inc.*, No. 3:17-cv-2648-L, 2019 WL 2448849, at *3 (N.D. Tex. June 12, 2019) (citing *Walton-Lentz v. Innophos, Inc.*, 476 F. App'x 566, 569 (5th Cir. 2012) (citing, in turn, 29 U.S.C. § 626(d))); *see also Beecham v. JC Penney Distribution Ctr.*, No. 18-02648-CM-TJJ, 2019 WL 2924842, at *2 (D. Kan. July 8, 2019) ("Requirements are slightly different under the ADEA: a plaintiff must similarly (1) file with the EEOC and then (2) wait at least 60 days before filing suit." (citing 29 U.S.C. § 626(d)(1))).

These "charge-filing instruction[s are] not jurisdictional …. [Instead,] they are properly ranked among the array of claim-processing rules that must be timely raised to come into play." *Fort Bend Cnty., Tex. v. Davis*, 139 S. Ct. 1843, 1846 (2019). Put differently, "[f]ailure to exhaust is an affirmative defense that should be pleaded." *Davis v. Fort Bend Cnty.*, 893 F.3d 300, 307 (5th Cir. 2019) (citations omitted), *aff'd*, 139 S. Ct. 1843.

> To obtain a Rule 12(b)(6) dismissal based on an affirmative defense, the successful affirmative defense must appear clearly on the face of the pleadings. In other words, [C&W is] not entitled to dismissal under Rule 12(b)(6) based on [this] affirmative defense unless [Nora] has pleaded [himself] out of court by admitting to all of the elements of the defense.

*Taylor v. Lear Corp.*, No. 3:16-cv-3341-D, 2017 WL 6209031, at *2 (N.D. Tex. Dec. 8, 2017) (citations, quotation marks, and original brackets omitted); *see also, e.g., Dunmars v. Ford Cnty., Kan. Bd. of Comm'rs*, No. 6:19-cv-01012, 2019 WL 3817958, at *3 (D. Kan. Aug. 14, 2019) ("The courts are clear that failure to exhaust administrative requirements can form the basis for a 12(b)(6) motion, so long as the 'grounds for the defense appear on the face of the complaint.'" (quoting *Cirocco v. McMahon*, 768 F. App'x 854, 858 (10th Cir. 2019) ("Although failure to exhaust is now an affirmative defense, it may be raised in a motion to dismiss when the grounds for the defense appear on the face of the complaint." (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007))))).

So, "unless it appears from the face of the [amended] complaint that [Nora] has not exhausted [his] administrative remedies," *Taylor*, 2017 WL 6209031, at *3 (citation omitted), the Court must deny C&W's motion to dismiss on the basis of failure to exhaust.

On reply, C&W argues, correctly, that in his amended complaint,

> Plaintiff has wholly failed to plead he has met conditions precedent and therefore his claims must be dismissed. Plaintiff has neither pleaded nor attached his notice of right-to-sue indicating that he has exhausted administrative remedies before filing his lawsuit. Plaintiff has not even included simply language such as his meeting all conditions precedent. While Plaintiff's Original Petition included a copy of the Charge, his Amended Petition even omits that supporting document and still does not provide support that Plaintiff in fact exhausted administrative

remedies.

Dkt. No. 15 at 3.

But, while C&W argues that these pleading deficiencies require dismissal for failure to exhaust – and they may if C&W had moved for summary judgment on this affirmative defense – here, they do not support dismissal under Rule 12(b)(6). *See Taylor*, 2017 WL 6209031, at *3 ("The amended complaint does not mention the filing of any charge with the EEOC or the receipt of a right to sue letter. Accordingly, with respect to her Title VII claims, the court cannot conclude that Taylor has pleaded herself out of court based on a failure to exhaust her administrative remedies."); *see also id.* at *3 n.5 ("The court does not suggest by its decision at the Rule 12(b)(6) stage that Taylor was not required to exhaust her administrative remedies with respect to her Title VII claims ….").

C&W is therefore not entitled to dismissal of the amended complaint based on Nora's failure to exhaust.

II.    <u>Factual Plausibility</u>

Stating a discrimination claim under Title VII and the ADEA requires Nora to allege the following *prima facie* elements: that he

> (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group.

*McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (citing *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir. 2005)).

Regarding such claims, the Fifth Circuit has cautioned that a plaintiff need

not make a showing of each prong of the *prima facie* test at the pleading stage. *See Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-12 (2002)). But this authority "does not exempt [Nora] from alleging facts sufficient to establish the elements of [his] claims." *Meadows v. City of Crowley*, 731 F. App'x 317, 318 (5th Cir. 2018) (per curiam) (citing *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016) (per curiam) ("Although [the plaintiff] did not have to submit evidence to establish a prima facie case of discrimination at [the motion to dismiss] stage, he had to plead sufficient facts on all of the ultimate elements of a disparate treatment claim to make his case plausible." (citations omitted))).

So, under Rule 12(b)(6), the Court must ask whether Nora has provided enough facts to allege that he suffered actionable discrimination in the workplace. *See Swierkiewicz*, 534 U.S. at 512-13. And, if he "has not pled such facts," it is "proper[ to] dismiss [his amended] complaint." *Meadows*, 731 F. App'x at 318; *see also Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766-67 (5th Cir. 2019) (noting that the district court's "task is to identify the ultimate elements of [the applicable employment-related] claim and then determine whether the" plaintiff has pled those elements but that a "district court err[s if it] require[es a plaintiff] to plead something beyond those elements to survive a motion to dismiss").

Here, Nora has not alleged facts to show that he suffered actionable discrimination <u>because of</u> his race (under Title VII) or <u>because of</u> his age (under the ADEA). *See* Dkt. No. 8, ¶¶ 3-10, 12.

But, because Nora does allege that a "lead person" – but not the person who suspended or terminated him – "referred to [him] as 'brother man,'" Dkt. No. 8, ¶¶ 10-11, the undersigned has considered whether this single utterance constitutes racial discrimination based on a hostile work environment and finds that it does not, because Nora has not pled "facts that allow the Court to reasonably infer that the alleged harassment was sufficiently severe to alter the conditions of his employment and create an abusive working environment," *Hendricks v. Boy Scouts of Am.*, No. 3:15-cv-304-M, 2015 WL 5459612, at *3 (N.D. Tex. Sept. 16, 2015) (citing *Stone v. La. Dep't of Revenue*, 590 F. App'x 332, 340-41 (5th Cir. 2014) (per curiam)).[1]

The Court should therefore grant the motion to dismiss the amended complaint to the extent that Nora has failed to allege a plausible claim of discrimination.

## Recommendation

The Court should grant Defendant C&W Facility Services, Inc.'s motion to

---

[1] *See also Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir. 1996) ("Whether an environment is hostile or abusive depends on a totality of circumstances, focusing on factors such as the frequency of the conduct, the severity of the conduct, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance." (citation omitted)); *Felder v. Blank*, No. 3:11-cv-737-BN, 2013 WL 6578995, at *9 (N.D. Tex. Dec. 16, 2013) ("The mere utterance of an ethnic or racial epithet that engenders offensive feelings in an employee, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986); *Lauderdale v. Tex. Dep't of Criminal Justice, Inst. Div.*, 512 F.3d 157, 163 (5th Cir. 2007))); *cf. Taylor v. Potter*, No. 99 Civ. 4941(AJP), 2004 WL 1811423, at *15 (S.D.N.Y. Aug. 16, 2004) ("Even if the term 'brother' is interpreted as a racial epithet, the Court does not find that McCall's isolated, one-time use of the term in this context to be evidence of discrimination." (collecting cases)).

dismiss Plaintiff Kevin Nora's amended complaint [Dkt. No. 11], and, because Nora's amended complaint fails to state a claim upon which relief may be granted after he was apprised of the insufficiency of his initial complaint, the Court should dismiss this case with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: June 22, 2020

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE